## BRADWELL v. BANK OF BAINBRIDGE.

1. Where in a sale of land the vendor delivers to the vendee a bond for titles conditioned to make titles upon the delivery to the vendor of certain described personal property, until such property is delivered or tendered the vendee has no interest in the land subject to levy and sale.
2. In the present case there was no evidence that the property which was the consideration for the purchase was delivered or tendered before the levy, and a judgment finding the property subject to an execution against the vendee was contrary to law.
3. It appearing from the record, however, that, by consent of parties and order of the court, the land has been sold and the proceeds held in court to await the final determination of this litigation, and that, on account of improvements made by the vendee after the purchase, the proceeds of the sale were far in excess of the market value of the land at the time of the sale, direction is given that the pleadings in the case be so amended as to set up whatever equities there may be in favor of any of the parties to the record and that final decree be entered preserving the rights of the parties.

Argued December 15, 1897. — Decided January 10, 1898.

Levy and claim.   Before Judge Spence.   Decatur superior court.   May term, 1897.

*F. S. Harrell* and *Bower & Harrell*, for plaintiff in error.

*Townsend & Westmoreland* and *Donalson & Hawes*, by *Harrison & Bryan*, contra.

SIMMONS, C. J.   It appears from the record that Bradwell agreed to sell to the Bainbridge Compress Company a lot of land in the city of Bainbridge.   He made to the compress company a bond for titles, conditioned upon its delivery to him of three and one half shares of its capital stock, of the par value of $100 per share.   The compress company became indebted to the Bank of Bainbridge, and upon its failure to pay such indebtedness the bank sued the compress company and obtained a judgment against it.   Execution issued and was levied upon the land sold the compress company by Bradwell.   Bradwell filed a claim.   By agreement of parties and a proper order of court, the land was sold and the proceeds of the sale placed in the registry of the court to abide the decision of the claim case.   The case was submitted to the judge without the intervention of a jury, and on the trial the above facts were made to appear. It also appeared that the compress company had not, prior to

the hearing, delivered or tendered to Bradwell the three and one half shares of stock, and that Bradwell had never executed an absolute conveyance of the land to the company.

1, 2. On the above state of facts the court found the property subject, and directed the fund in court to be paid to the bank. We think this was error. When one sells to another a lot of land and makes him a bond for titles conditioned to make a good and sufficient title upon the payment of the purchase-money, the obligee in the bond has no leviable interest in the land until the purchase-money or some part thereof has been paid or tendered. Upon the same principle, we think that where a vendor sells land and makes a bond for titles conditioned upon the delivery of stock in a corporation, or of any other specific thing, and the stock or other specific thing is neither delivered nor tendered, the obligee in the bond has no leviable interest in the land. In the case under consideration Bradwell made the bond for titles, and the compress company was to deliver to him three and one half shares of stock of the par value of $100 per share, before Bradwell was to make it a title to the land. The evidence discloses that the compress company did not deliver nor tender to him this stock before the bank's execution was levied upon the land. It is, therefore, clear to our minds that the compress company had no such interest in the land as was subject to levy and sale under the bank's execution. The tender of the stock made at the trial was too late, and did not vest a leviable interest in the compress company at the time of the levy. The illegal levy could not be made legal by such subsequent tender.

3. As before stated, the land was sold, by consent of all parties and proper order of the court, before the trial of the claim case. At this sale the land brought $1,500. It seems that when Bradwell sold the compress company the land, it was valued at about $350. It brought so large an amount at the sale by reason of improvements put upon it by the compress company. Pending the suit of the bank against the compress company upon its indebtedness to the bank, the property of the compress company was placed in the hands of a receiver; and it appears that subsequently the property of the bank was likewise placed

in the hands of receivers. The president of the bank was also president of the compress company, and was made one of the receivers of the bank. When, as president of the bank, he lent money to the compress company, he knew that the company had no title to the land and had not delivered or tendered Bradwell the stock upon the delivery of which the bond for titles was conditioned. It also appears that pending the trial of the claim case an equitable petition was filed by the receivers of the bank in aid of its issue in the claim case. Under this state of facts we would suggest that the pleadings be further amended so as to deal with the fund now in court, in order that justice may be done to all parties. Although the land was not subject to be sold as the property of the compress company by virtue of an execution in favor of the bank, yet, inasmuch as it has been sold and Bradwell, the claimant, consented to the sale, and inasmuch as the improvements put upon it by the compress company made it bring an amount largely in excess of the purchase-price, it would be inequitable to allow Bradwell to recover the whole of the proceeds of the sale. On the other hand, inasmuch as the compress company had not paid anything for the land, and had neither delivered nor tendered to Bradwell the stock which it had agreed to deliver to him, it would be inequitable to allow its creditors to claim the whole fund.

Whether Bradwell ought to receive the value of the stock at the time it ought to have been delivered, or whether he ought to receive payment for his land, is a question we do not now decide. It seems to me, however, that the true equity of the case is that he should receive payment for his land at the amount agreed upon between him and the compress company at the time he agreed to sell, which was probably the par value of the stock he was to receive; that after he has been paid that amount, the balance of the proceeds of the property go to the creditors of the compress company. I analogize this to a scheme suggested by Mr. Justice Lumpkin in the case of *Swift* v. *Lucas*, 92 *Ga.* 796, and to the scheme provided by the act of 1894, as codified in section 5433 of the Civil Code. This, in my opinion, would be equitable to all parties. Bradwell would be paid

for his land at the value he put upon it at the time of the sale, and the creditors would get the excess which was produced by the improvements put upon the land by the compress company.

*Judgment reversed, with direction. All the Justices concurring.*